The judgment of the court was pronounced by
Rost, J.
This is a redhibitory action. The plaintiff claims the rescission of the sale of a slave' sold to- him by the defendant on the 21st October, 1847, on the ground that before and at' the' time' of the salethe slave was afflicted with an incurable chi'onic pulmonary consumption, of which he died on the 31st March, 1848. The defendant filed a-general denial, and has appealed from the judgment rendered against him-on the issue thus made'.-
There'is no evidence of the existence-of any external symptom of the disease alleged before or at the time of the-sale-. A> witness who had the slave in charge during several yeax's testifies that, down-to-the time of the sale, he was sound and always healthy, excepting once, when he was sick from excessive drinking and had the delirium tremens. Witness further says,-that he was unifoi-mly put to hal'd work, and that he never complained of pain in the side, difficulty of breathing oxi'eough.- The'same witness-saw the'slave twice after the plaintiff purchased him,- and says that lxe-never saw him look so well before.
On the 1st of March, 1848’, a physician was first called in to see him ; he felt sick, and another physician was called- in his place. These two gentlemen attended the slave until he died, and made a. post mortem examination, in which they ascertained the existence of the disease alleged. One of them gives it as his opinion that the disease was of two or three yeai's’ standing; the other says, that it could not have commenced less than ten or eleven months befoi'e its termination. Another physician examined for the defence has declared, that it is impossible to say how long the disease has existed from a post mortem examination, and that it frequently runs its course in a few months.
*709 In the ease of Seaton v. Municipality Number Two, 3d Ann. 44, we held that the conjectural opinion of witnesses, unsupported by any other evidence, did not carry conviction to the mind, and could not be received as full proof of any fact. In the case of the Executors of Duprey v. Prescott, lately determined in the Western District, we applied the same principle to the opinions of physicians founded on post mortem examinations, and intended to show the time at which the disease had commenced.
This rule appears to us peculiarly applicable to the present case : the slave was purchased by the plaintiff as an habitual drunkard; that vice predisposes to the disease of consumption, and, according to witnesses, greatly accelerates its course. We believe, under the evidence, that it may have commenced after the sale, and that possibility is fatal to the plaintiff’s claim.
But supposing that, although no outward symptom indicated the disease at the time it did actually exist in its incipient stage, it was not then necessarily incurable. A few weeks after the sale-,, when the symptoms proved on the trial were first discovered, it was the duty of the plaintiff to call in a physician, and to have the slave properly attended to ; instead of this,, he- kept him at hard work all the time, and no physician saw him until months after those-symptoms were known to the plaintiff to exist, and when it was too late to arrest the- progress of the disease; this negligence and want of humanity en his part, would, under all circumstances, prevent his; recovery.
It is therefore ordered, adjudged and decreed, that the judgment be reversed; and that there be judgment in favor of the defendant, with costs in both courts.